We've got two cases for argument today. The first is 13-1356, Deckers Corporation v. U.S. Mr. Gill, whenever you're ready. Good morning, Your Honors. Despite the long history in this case, and in some instances the complex discussion of the issues and the briefs filed by the parties, if basic time-honored principles of customs law are applied to the facts, this is actually a simple case. The most basic of these principles is that a NAO nominee provision includes all forms of the named article, including forms created after enactment, and that tariff terms are written for the future. These basic principles, cited throughout our briefs, were recently reaffirmed, as recently as a month ago, by the court in Link-Smack-Sync v. United States, Appeal No. 2013-1356, which held, as a matter of law, that if an article is provided for a nominee, it must be so classified. See also the Wilton Industries case, decided last November and cited on page 26 of our reply brief, to exactly the same effect. Applying these principles to this case, we have certain things that are clear. There is a NAO nominee provision for training shoes. That means for an article to be classified as a training shoe, it must be, one, a shoe, and two, used in training. As to the first of these, the court has already held in Deckers 1 that the Teva sports sandals, an issue, are shoes, despite the trial courts holding to the contrary. As to the second, there are almost 400 pages of deposition testimony, elicited by the government, and other evidence in Deckers 2, that the Teva sports sandals are used in training, and are particularly well suited. But the elephant in the room with regard to your case is Deckers 1. Yes. So could you please explain to us why we shouldn't feel that we are governed by the principles there, that all of the named exemplars have a particular feature? Absolutely, Your Honor. One, in Deckers 1, and I recognize that you participated in that decision, Judge Snow, the court expressly delineated the issues which it was deciding, namely, and this is set forth in the federal reporter decision at 1315, that the statutory interpretation that Additional Note 2 defines the term, an issue. That was rejected by the court, and it's not an issue in this case. The second issue was that the CIT erred in its application of the rule of the justum generis, and we're coming to that. And our argument again was rejected. And the third was the CIT's, quote, analysis that the Teva sports sandals as not being issued was incorrect, close quote. On that point, the court agreed with us, but nevertheless sustained the finding of the trial court on the justum generis analysis. And again, the court reiterated what it was deciding on page 1316 of the decision. Our inquiry, therefore, calls for us to assess whether the Teva sandals are, quote, the like, i.e., whether the imported shoes are like tennis shoes, basketball shoes, gym shoes, and training shoes. The court could not have gone directly to that justum generis analysis if it had considered the training shoe issue. But it is true, though, that the court said that it was defining the essential characteristics of the entire class, subclass, correct? I don't think it said that, Your Honor. I think the court worked on an assumption, and it's an assumption in that case, and we have to really get to that because it's at the heart of this whole thing. The government obviously is making the argument, as I expect it would, that Deckers 1 resolved the case, and it's very decisive on this issue, precisely because the justum generis decision or finding informed the common meaning of the term, of the exemplars. However, there is not a scintilla of evidence in Deckers 1 or this case, not a scintilla of evidence, that the named exemplars have to have closed uppers. So that argument is that Deckers 1 was just wrong. I certainly would say that if I had to, but I think the court was stuck with what was served up as findings from the trial court. And because it said in the opinion, talking about this open upper issue, it says this was based on the customs ruling. I'm sorry, where are you in the opinion? On page 1314. Page 1314. It says the finding is based on the customs ruling, customs reasoned that the sandals were not like the named exemplars because of the open uppers. What about the statement, though, at 1317 of the opinion, which says the evidence adduced to trial established that the fundamental feature of the exemplar shares the design, specifically the enclosed upper. Then it goes on from there. Your Honor, there is nothing that I can find in that record, and I tried that case, and I've read it a million times, that shows there's any evidence to that effect. But whether that is true or not, isn't that kind of irrelevant for our purposes as a panel? You went for rehearing, I think, I recall, on that case. The mandate issued, the hearing was denied. Whether you're right or wrong at this juncture about whether the evidence supported the holding in that case, how do we deal with it? First off, we deal with it from the standpoint of Stone and Downer. The decision of the United States Supreme Court that makes it very clear that a litigant in a classification case in customs can come back into the court and fully relitigate both the factual and legal issues of the case. That is as basic a principle in customs law as any, and it is very clear. Wait, you said it's a Supreme Court case for that? Yes, Stone and Downer v. United States. Did you cite that in your brief? It's at the heart of our brief. I'm sorry, it's U.S. v. United States. Yeah, I'm sorry if I said Stone and Downer first. It's at the heart of customs law and customs classification because the court recognizes the evidence can be presented one way in one case and differently in another case. The law can be argued differently in both cases, and you're entitled to do that, and that's why we came back this time. If there's any doubt about what the trial court did on the facts in the first case, we're entitled to enhance that record and have that evidence considered. Because at the end of the day, in the first case, the CIT, the so-called evidence... You're saying that in Decker's one, the court erred in its conclusion, its legal conclusion, that you have to have an enclosed upper to fit within that particular HTSUS provision. Well, yes, I would say that for sure, because there is... The requirement of the statute to get into this provision for training shoes is that the footwear have soles of rubber or plastic and uppers of textiles. That's the only other requirement besides the fact that it has training shoes. There is absolutely nothing, Your Honor, nothing in the legislative history or the statute that supports the idea legally that it must have enclosed uppers. But you're not making now the arguments you made, I guess, in the first case with respect to note two. No, that's a dead issue. As heartbroken as we were, we lost that one. It's over. But I think that Judge Saldo has gotten to the point here, and the thing that's bothering me the most is that it isn't simply a situation where the facts are different, and you're saying, well, we've got a whole new set of facts, we've got a different product, for instance. This is a situation where this court made a legal conclusion. Now, you're saying it didn't have the factual basis to make that legal conclusion, but it was truly a legal conclusion that was made. Right, based on an assumption and not real evidence. And you're saying that either the CIT or this panel could simply ignore that legal conclusion? Absolutely. That's very clear from the Schott decision, and it's very clear from a number of cases. If, in fact, the legal conclusion is wrong, then the court does not have to follow it. Well, I'm not sure I read Schott to be quite that broad. I mean, Schott is talking about the conclusion in Schott is they should have been allowed to offer additional evidence, it believes, would undermine the prior decision. Well, that principle might apply to this case, so I assume you weren't denied the opportunity. There is evidence in the record that you wanted to produce, and perhaps that's limited to purposes of if it goes – if this panel is bound by Decker's one, certainly on rehearing, the full court would have the opportunity and a fulsome record on which to evaluate your rehearing petition. Is it your view that Schott means more than that? Well, I think it does mean that – it certainly means just what you said it says. But you couple that with the H.W. Robinson case, and that makes it abundantly clear that the court, as it did in this case, reversed its own decision in Damrock and reversed the customs court because they said it was wrong. We went off on the wrong facts, and it rejected stare decisis for that reason, and you can do so in this case. Was that our case that we rejected the stare decisis with respect to one of our opinions? It is a decision of the Court of Customs and Patent Appeals, the predecessor to this court, whose decisions are binding precedent in this court, yes. And it said what? That court, the decision in the Robinson case, it dealt with first the Damrock decision. And it said Damrock held that the justum generis analysis informed the meaning of an aeonomany provision. That's what the government's arguing here. And that's what the court did in the first case. And the government didn't, in its brief, advise the court that the Robinson case reversed Damrock, and it reversed the customs court and itself and overturned its own decision because the decision simply was wrong, and it refused to apply stare decisis. And all we're saying is here, the lower court in this case did not consider the evidence at all that was introduced because itself it was constrained by the decision of this court in Decker's one on the justum generis analysis. And all we're saying is that, no, you should look at that evidence and give it a second look because there's a whole lot of new evidence, including evidence, testimony from the government's own expert witness that says training shoes can have open uppers and be used as training shoes. That's in the appendix on page 511. That's the government's own witness. Bolstering the testimony of our witnesses to the effect that they use these things as training shoes, that they are extremely good for training in certain applications. And these are witnesses who are not only the people who marketed the shoes, invented the shoes, but who are athletes themselves who use them in extreme athletic events. Are you saying that we as a panel can basically come to a different conclusion as a matter of law than Decker's one did? Yes, absolutely. But we'd have to go in bank. I don't believe that that's so because you didn't do it in the Robinson case. In Robinson, the court, I think that court always sat in bank. That was the Court of Customs and Patent Appeals. And they basically, I'm looking here at Worley, Rich, Martin, Smith, and William Kirkpatrick. I mean, I think the court, I could be wrong on this. I wasn't on the court, obviously, but I believe the Court of Customs and Patent Appeals always was sort of en banc, if you will. So it could do that. We're not in that position, though. Am I wrong on that? I think you are, simply because in Stone and Downer, it says you can give a fresh look to this. And that's all we are asking for. Maybe I'm wrong, but it would seem to me it's a pretty startling proposition, albeit in this unique trade case setting, where we could, as a panel, say that another panel was wrong. I think you can, but at the end of the day, you can distinguish the two cases. You had on your platter in that case the finding that was based on nothing but opinion. Based on that factual finding, that's the result you reached. If we had different facts, as you were entitled to present on the Stone and Downer, we could reach a different result. That doesn't mean we were wrong the first time. It means we made that decision based on what was on our plate. In this case, on our plate is a whole new ball game with evidence that's undisputed that we have training shoes that fall within the AO nominee provision, with testimony that's unrebutted, that the training shoes can be open. And the court is entitled to say on the basis of this new evidence, under Stone and Downer, that we can reach a different result. That's what it's all about. Let me ask you this. So your interpretation of Stone and Downer is extraordinarily broad. Maybe you're right, but just so I follow the logic here. So tomorrow, you could have another importation of the same article, and you could go back and argue again. So whatever this panel decides, you could then argue with clearly erroneous. The next panel wouldn't be bound by us either. In terms of what it is, it's not a question of being bound by it. It's we've got different evidence that's before us. This court can't decide the facts. It's not your job. But you get what you get from the trial court. And you look at those facts as they give them to you. And if you get a new plate with a totally different set of facts or an elaboration of the facts that wasn't in the first case, frankly, training shoes got lost in the shuffle in the first case. It was all about U.S. Note 2. That was our whole case. And we argued that to death. And the justum generis argument was a secondary issue. Training shoes was forgotten about. So what do you understand to be the Supreme Court's rationale for this notion that, for instance, whatever argument you think got lost in the shuffle today, you could bring up tomorrow? Well, specifically, if I may, the court was pretty clear in Stone and Downer, which has been followed consistently by the courts ever since it was decided in 1927, that you can and have the right, even with the same merchandise. And certainly we've got different merchandise here as well. And the same merchandise. That you can come in and argue both new law and new facts. That is what that case says. And there is nothing in this case to prevent this court from looking at that so that it can uncourt. Has our court, since we've been in existence for 30 years, have we in any case embraced or adopted that notion? I wish I could answer that question. I mean, I'd welcome the opportunity to brief that. But I can't honestly answer that one. But I can say this. Well, you take the shot optical in your brief. Well, shot, of course. But I have to say that you also need to look at, still consider the Robinson case, the shot case. These are the cases that really, at the end of the day, and the avenues and leather cases, particularly the avenues and leather cases, where the court, in three separate instances, including took the case where the same classification was involved and reached a different result in the second case. So you've got the avenues. The same products? Or different types? Same products. Same products. So you have in avenues and leather three trips to this court. And at the end of the day, the court did not follow in avenues two the decision in avenues one based on the new argument, the new provision that was argued for by the parties. And at the end of the day, we've got really, what I think, a decision. If you go with the basic principle of law that an anonymity provision includes all forms of the named article, we've got a result in the face of undisputed testimony that these things are training shoes. We've got the result that a thing that is a training shoe is not classifiable in a provision that provides for, quote, training shoes. Mr. Gill, let me ask you one question. I realize you're not reasserting your note two argument. You mentioned that a bit ago in response to, I think, a question I had. But just to explore this a bit, under your approach, am I incorrect in thinking that you would say you could have if you wanted to under Stone and Downer? In other words, you're not raising, again, your note two argument that you lost in Decker's one. However, as I listened to you arguing today, I would think that you would take the position that as a matter of law under Stone and Downer, you could have reasserted your note two argument saying that Decker's one was wrong on that point. Yeah, I could, but I'd have one foot in the grave and the other on a banana peel if I made that argument. You chose not to do it, and I can understand why. But am I correct in thinking that you would take the position that as a matter of law, you could have if you had chosen to do so? Could have, but there's more to why I didn't. Because there is no factual issue that undermines us on note two. That was a flat out statutory interpretation. I understand. And so it would be in the extreme that I would expect the court would even consider the argument. But you would say Stone and Downer would allow it. Theoretically. Yeah. Theoretically. But if you look at the real picture, you've got, in this case, a record that on its face, on its face, shows these things are training shoes, and we've got the absurd result that it doesn't go into the provision for training shoes. That totally violates every principle of customs law. Well, yes, I do have one last question, and that is, how do you get around outer circles? Don't you read that as having created or clarified what may have been a question mark and shot optical by saying that when we're talking about a legal determination, that legal determination is binding? Oh, I think not, Your Honor. You know, the outer circle case and its companion, the SGI case, the two of them, the government argue stands for the proposition that a justum generis clause can inform or even limit the scope of the common meaning of a term. That case involved soft-sided coolers, not classifiable in the aeonomany provision for model cases. But there, in those two cases, the court analyzed the common meaning of the term model cases. In Decker's one, there was no analysis of the common meaning of the term training shoes. And in outer circle, the government, which was reversed, never presented any evidence to the court, evidence, that the bottle wraps in issue had been designed, marketed, and used in model cases. In this case, there's overwhelming evidence elicited by the government, which they're bound by, that the Teva Sandals are training shoes and designed and marketed and used as such. Therefore, I think outer circle supports our case, Your Honor. The classification must be based on evidence that shows that the articles are designed or sold either as beverage containers in outer circle or as training shoes in this case. But the key point, I think, in outer circle is the fact that our court said it was bound by the determination in the earlier case. Now, you're saying that, well, legally, that determination was more on point than the one we made in Decker's one. But I'm going back to your argument that we're never bound, either legally or factually. If I tried to convey, stare decisis is a basic principle of law in all courts. And in normal circumstances, stare decisis binds an appellate court. There's no way to argue against that. But it is not an immutable principle. And at the end of the day, if a decision is clearly erroneous, the court has the right to overturn that decision and not perpetuate error. And I'm honestly Well, that's certainly true in all cases. We have the right en banc to do that. But what you seem to be arguing is that in a customs classification case, that the fact that one panel would be bound by another, it somehow disappears. That's right. And that's because of Stone and Downer. I think we have your argument. We're way over. So we'll restore a couple minutes for rebuttal. Thank you. And let's hear from the government. Ms. Powell? Good morning. To start, I wanted to touch on the overriding argument by Deckers, which is Stone and Downer allows an importer to repeatedly relitigate the classification of its merchandise. It's true that Stone and Downer says an importer can relitigate the classification issue. But it's also true, as pointed out in Avenues and Leather, that that right is sort of tempered by the doctrine of stare decisis. So you don't keep litigating the issue Don't Stone and Downer say that? Avenues and Leather actually says that. The Avenues and Leather 2 case. Right, but I think we should need to start with the Supreme Court. So, I mean, the Supreme Court does leave open the possibility that you can keep coming back. And what's the point of allowing you to keep coming back if then the court can't rethink what it did? Well, Avenues and Leather is actually a good example of an importer keep coming back. Here, Deckers came back. The court listened to the evidence and then threw it out. It didn't prevent them from presenting evidence. It actually considered the evidence because it had to decide whether this case was appropriate for summary judgment. So it did look at the evidence and see whether there were disputed material facts. So this is one of those cases where you can. And Stone and Downer says you can relitigate. But again, look at Avenues and Leather. Where Avenues and Leather came back, similar folios. I think it might have been the same heading. But they said, the importer acknowledged that Stone and Downer lets us come back and relitigate. But we're not going to challenge this court's holding that 4202 has this overriding characteristics of organizing, storing, transporting, and maybe one other characteristic. My problem is Avenues is not a Supreme Court decision. No, it is not. And you don't even brief Stone and Downer in your red brief. No. I mean, it seems kind of a basic principle that what the Supreme Court said is the thing that we have to start with. Yes. So the Supreme Court says you can keep coming back. Yes. But the Supreme Court doesn't say, oh, you can come back, but you just can't do anything about it if there's already a decision out there. So my question is, how do you say from Stone and Downer, what was the point of allowing this relitigation if there was going to be normal preclusion principles or stare decisis principles in any event? Well, again, I understand Avenues is not a Supreme Court, but just using an example. Here, they came back, and they wanted to show that they're— Can we go to the Supreme Court case? Tell me about the Supreme Court case. Well, yeah. We'll get to Avenues in a minute. Yes. I understand what you want to argue. I'm asking you a question about Stone and Downer. Yes. So what was the point in Stone and Downer? What was the rationale that you believe the Supreme Court relied upon for allowing relitigation and classification cases? And where do you see a limiting principle in that opinion? Well, the Stone and Downer decision, yes, they let importers come. And the rationale is so that they can present evidence and so that one importer might present more evidence or different evidence than another importer on similar or the same merchandise. But it even says the same party. So it doesn't say a different importer. Yes. Okay, so the same person. Yes. I mean, I'm trying. Don't get me wrong. It's kind of shocking to me, too, that the Supreme Court said this. But having said that, and then we have Schott that cites Robinson and says, you know, we go back in and we rethink these things. Yes. So, I mean, so how could, even if we've got Avenues in Leather, which you think sort of seem to go the other way, how could we have done that? In terms of how could you have? If the Supreme Court and our court were already on record saying go back in. Right. All right. The fact that we may have another time assumed that normal principles of stare decisis apply doesn't change where the law is, does it? No, I think stare decisis does still apply. I understand what you're trying to say. What's the end of play with stoning down or what's the purpose? You know, is it throwing stare decisis out the window essentially and doing away with it? No. My understanding is that it doesn't do away with it. My understanding is it does let importers come in and bring new merchandise, and it actually lets, and I'll go even a step further. It does let importers actually assert new legal arguments, but they're still stare decisis, and I understand stoning down doesn't really go into stare decisis, but the rationale in customs litigation is the importers are free to keep coming back and relitigating their merchandise, and they do. It's just, you know, Decker's might have different evidence now than it did before. So that's one side of the question, which is can they keep coming back, but I think what we care more about is can we keep coming back? Can a panel, therefore, is the logical extension of what you've just said, that importers can keep coming back, new legal arguments, new factual arguments. Does that undermine the principle that we follow in other areas, which is we're bound by a panel unless and until the en banc court overrules that first panel? Is it the government's position that that principle continues to apply to classification cases or not? Yes, absolutely. So how do you reconcile the two? Well, the Supreme Court and everybody else says they can keep coming in legal questions, factual questions, but essentially the panel, just pro forma, has to kind of reject that. So the only bottom line is they can keep doing that because they might get the attention of the en banc court someday to overturn it. Is that your view of the limits of what we're talking about? I believe, yes. I believe what happens is in Schott, yes, in Schott the court said the importer can come back, present evidence, and show that the legal interpretation was clearly wrong. Yes, there's a gap after Schott as to what happens if the CIP holds that that decision is legally wrong and then it comes here. But the thing is that in this case, there has been no finding or no showing that what happened below is legally erroneous. Yes, but that's not the question. That jumps us to the merit. Accepting your friend's view of what the Supreme Court has told us we have to do, we should still say adopt the rationale of Decker's one because you think that's right. But that's not what we're talking about here. We're talking about the legal principles that apply to what authority this panel has if it feels otherwise found that Decker's one resolved the question here. Are we allowed to revisit it because there's some special provision for classification cases that you can keep coming back and relitigating? With respect to this court, my understanding and what we briefed is that this panel cannot overrule another panel. It's my understanding that if this court wanted to revisit the Decker's one case, it would have to have sat on bonk and revisited the issue. I believe that's the mechanism for if this court believes that Decker's one is incorrect. And don't you think that the Supreme Court in its case undermined that principle by what it said? I think it didn't deal with that question. I think it dealt with the issue that was sort of before it and didn't really think through practically how this would work, the mechanics of how the CIT works and how this works and how it all gels together. So that's why we have sort of this gap. We have Schott, we have Stone and Downer saying, yes, you can come back and re-litigate. Then you have Stare Decisis saying, wait, wait, you can re-litigate, but you're still burdened by what we've held before. And we've got that weird Robinson thing that adds to... Yes, and we have Robinson. So Stone says, no res judicata. Yes. But we say in Schott that that doesn't wipe out all Stare Decisis principles. But if you can show clear error, Stare Decisis doesn't apply. Yes. So we would be allowed to say that we are not bound by Decker's one if we believe there was clear error, right? Well, see, I think, again, I think that might conflict with the rule of one panel can't overrule another panel. So, again, I would think, yes, you could if you saw en banc. That's my understanding of how it works, that one panel cannot... But even the avenues cases that you rely upon, they draw that distinction. They point out that unless, of course, there's clear error. I mean, they say this is a whole different animal than every other kind of Stare Decisis. Right, they do. So that clear error would allow us to ignore Stare Decisis. I mean, that's what they even said in the cases that you rely upon so heavily. Yes, they do. I admit they do say that, but, again, there's no application of it. They do say that, but, again, there's no application. And avenues 11, they didn't really try to show that the prior decision was clearly erroneous. They just wanted to show that their merchandise, their legal decision wasn't clearly erroneous. Well, they ultimately didn't, the second panel didn't rely on the first, found it not binding. They found the classification different, but they were still bound by the finding that 4202 has those four characteristics of organizing, transporting, storing, the fourth one. But they were still bound by that. In the absence of a showing of clear error. Well, see, again, they didn't try to show clear error. So you have in the decision statements of facts that are just broad and general, but they really didn't come into fruition in the decision. So we don't see it actually play out there. Because they didn't really want to show clear error in terms of the legal determination. But what if we would have the right to set aside Decker's wine based on a showing of clear error? Yes. What would be your response to the argument about whether there's sufficient clear error to allow us to do that? Absolutely. So assuming that we're past all this oddity. Yes. It is a mess. But assuming we're past it, then what? Well, our contention would be there hasn't been a showing of clear error. In Decker's wine, it was a trial. Both parties were allowed to present any and all evidence. There was no preclusion or evidence. And Decker's did make the argument that the sandals were EO nominee training shoes. At the end of the day, that analysis didn't make an indecision. But they weren't precluding from raising it, and they did raise it. So this court properly considered, I mean, the CIT properly considered all of the evidence and came up with the physical characteristics that unite all of the articles in that provision. And then this court affirmed it. But the CIT here refused to do a clear error review. I don't necessarily think it refused to do one. Because Decker's raised it. It's in their brief. Right. But the opinion, which is very short, simply says Decker's won't resolve this question, pretty much. Correct. So the question is, why shouldn't we remand for a clear error review? Because given that the parties have raised it, and I assume that the Court of International Trade, that's one of the things that, that was sort of the centerpiece, considered that argument and felt that there wasn't any clear error. They listed all the facts. Yeah, but you argued that they couldn't do it. Here's the problem. We can't assume. I mean, you made this, the government made the same argument below that it's making here, which is you're not allowed to do the clear error review because Decker's one is binding. That's the end of the inquiry. That's it. All right? So why wouldn't we assume that when the CIT said Decker's one is binding that they bought your argument? Well, because there's also a fundamental principle in customs law that there's a Jarvis-Clark obligation. So at the end of the day, the court, whether we raise the argument, not raise the argument, whether we address it or not, the court has an obligation to get the classification correct. So given that Decker's raised a clearly erroneous argument, I would assume that the court considered it all. It had a wealth of information in front of it, and it still felt like it was bound by this court's decision. Now, one question I was wondering, it's interesting. The Stone and Downer case, the Stone and Downer court, the Supreme Court there, of course, was reviewing a decision of the Court of Customs and Patent Appeals. It wasn't reviewing a circuit court decision. And the question that was presented is, is the judgment of the Court of Customs Appeals in November 1923 involving the same customs classification an estoppel by res judicata against the government? So they were talking about the Court of Customs and Patent Appeals and the question of res judicata. I'm wondering if that's a little bit different than what you have here in terms of our panel looking at a previous panel decision. I'm just kind of thinking out loud. I apologize. I don't know whether the Court of Customs Appeals in those days sat in panels or whether it was an en banc court every time it sat. I just don't know. Do you have any sense of that? No, I'm sorry. Is my question relevant? It may not be. Well, I do apologize. I'm not too familiar with the Court of Customs and Patent Appeals. I've tried to research it, but other than that… It may be relevant. The only point I'm trying to make is that if, in fact, that court always sat, quote, en banc, close quote, like the old Court of Customs and Patent… In other words, if the Customs Court, whose decision was being reviewed by the Supreme Court in Stone and Downer, always sat, quote, en banc, like our old Court of Customs and Patent Appeals did, then the question of panel deference would not apply because they would always be en banc and they could always change. Yes, if your… Is that what I'm saying? Yes. I don't know the answer. Right. If your statements were true and the court always sat en banc, it wouldn't be a panel for reversing another panel. It would be en banc. But we have to be concerned about that, whereas our Court of Customs and Patent Appeals and perhaps the old Court of Customs Appeal that was involved in Stone and Downer didn't have to. I just don't know. I'm sorry. I don't know whether it always sat en banc or not. But yes, if it always sat en banc, then that would have some relevance to the… Right. I'm sorry. I don't know either. I just wanted to come back to the clear error analysis one last time. Here, there hasn't been a showing of clear error. The clear error that Decker's alleges is that somehow when Decker's one analyzed the terms alike, the usum generis, that that analysis could not inform all of the other eonominae provisions. And somehow that violates the doctrine of eonominae provisions. And our contention is that it doesn't. Any usum generis analysis by its nature is going to put things in categories and it's going to exclude some and it's going to include some. So just by virtue of saying you have a usum generis and it can't limit or narrow, somehow that's clearly erroneous. It's not. So you're saying the only argument they really made was a legal one and they didn't make the factual showing necessary to fit within Robinson or Schott? Yeah. The primary argument about, and that was the first thing that was said by Decker's, was that black letter law, they feel like there was a clear error because somehow what Decker's one did, the usum generis analysis somehow violates the eonominae doctrine of interpreting statutes. And our contention is that it doesn't. Like I said, by virtue of usum generis and looking at all of them, you are going to put them in a category. You're going to say this provision only covers items with these characteristics. It's going to, by nature, limit. Like 4202, Avenues and Leathers said organized, store, protect. That means all the articles have to do that. By nature, it's going to limit that provision to those type of articles. You're saying, Ms. Powell, that even though Decker's one involved a usum generis analysis, that analysis, the way it was conducted, and what was involved in that case, necessarily determined the question at issue here. Absolutely. That's not a problem. That's not legal error somehow. No, it's not legal error. And again, I just wanted to point out that there's been some discussion, a lot of discussion of Schott. Again, the CIT, the Court of International Trade, allowed both parties to present all the evidence. There wasn't any prevention of evidence here. And your view of Schott is that that's all Schott said. That's my view of Schott, is that Schott said that the Court of International Trade should have let the importer present its evidence. And here… To what end? I mean, not just for a needless exercise. If we're allowing them to fill up the record with new evidence, then there has to be an assumption that somewhere down the road, someone is going to review that. So that's the question. Right. And I think the end of Schott sort of said, well, we're not going to pass judgment on the evidence. So it does leave the question open, but Schott only stands for that proposition. And if it's an open question, your answer to that open question would be that only for purposes of en banc review and consideration would that new evidence be relevant. That's my understanding of how the procedure works. All right. I think we have your argument. Thank you. Mr. Hill, we restored two minutes. Thank you. Thank you. We certainly have covered a lot of the issues that are at the heart of this case. But in response to the last point made by my able adversary, the analysis in Decker's one was a justum generis analysis. It was not an AO nominee analysis. And at the end of the day, that legal analysis we are entitled to have considered anew. And without reversing Decker's one, you don't have to. Decker's one, we had a justum generis analysis, no AO nominee analysis, where you have to look at the common meaning of the term. What is a training shoe? And then make the secondary application of that common meaning as to whether it embraces the articles before the court. That was not in Decker's one. It's in this case. And you could have both decisions stand because they would not be inconsistent because one is based on totally different evidence and a totally different legal analysis. And if stone and downer stands for anything, it says this court and this panel can do that. It's very explicit that you can come in and re-argue both the law and the facts. And there's nothing, otherwise the case would be, to follow Judge O'Malley and Judge Prosser's remarks, it would be useless. We'd go through a meaningless exercise. And we've been at this for a long time. It took a long time to put that record together. And it's before the court, and it's totally different from what you had in Decker's one. So I submit that if stone and downer means anything, it means that you can absolutely decide this case on the basis of the evidence before us. And at the very least, at the very least, remand the case to Judge Aquilino, who disregarded that evidence, feeling bound by the first case, to say, no, consider that evidence. And make a decision that we can then review and make a legal determination as a matter of law and the common meaning, and he should also make a legal determination. And then this court would be in a position to review both the factual evidence for a clear error determination and the question of law de novo. And there's nothing that stops that. I think we have the argument. We thank both parties for coming. Thank you, Your Honor.